UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DETROIT KELLY,

                              Plaintiff,

                                                        Case # 13-CV-6631-FPG

v.

                                                        DECISION AND ORDER

SERGEANT JAMES McGOWAN[1] et al.,

                              Defendants.

## INTRODUCTION

Plaintiff Detroit Kelly ("Plaintiff") brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Monroe County Jail ("MCJ") Deputy Sheriff Sergeant James McGowan and Superintendent Ronald Harling (collectively, the "Defendants").[2]  ECF No. 1.  Plaintiff alleges that his visitation privileges were restricted in violation of his constitutional rights when he was an inmate at MCJ.

On January 25, 2016, Defendants moved for summary judgment.  ECF No. 15.  Although this Court granted Plaintiff two extensions of time to file a response in opposition to Defendants' motion (ECF Nos. 19, 22), Plaintiff failed to do so.  For the reasons stated below, Defendants' Motion for Summary Judgment is GRANTED, and Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

---

[1]      Although the Complaint is against "Sergeant McGown," the parties agree that the defendant's correct name is Sergeant James McGowan.  *See* ECF Nos. 6, 8.  The Clerk of Court is directed to amend the caption accordingly.

[2]      Plaintiff's Complaint was dismissed against defendants Sheriff Patrick O'Flynn and County Executive Maggie Brooks pursuant to a Screening Order in accordance with 28 U.S.C. §§ 1915(e) and 1915(a).  ECF No. 3.

## DISCUSSION

**I.**     **Summary Judgment Standard**

Summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986). The non-moving party may defeat the summary judgment motion by making a showing sufficient to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, "mere conclusory allegations or denials" are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980).

Because Plaintiff is proceeding *pro se,* his submissions are read liberally and interpreted "to raise the strongest arguments that they suggest." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (citation omitted). Nevertheless, proceeding *pro se* does not relieve a litigant from the usual summary judgment requirements. *See Wolfson v. Bruno*, 844 F. Supp. 2d 348, 354 (S.D.N.Y. 2011). When a *pro se* plaintiff fails to oppose a motion for summary judgment after he or she has been warned of the consequences of such a failure, "summary judgment may be

granted as long as the Court is satisfied that the undisputed facts 'show that the moving party is entitled to judgment as a matter of law.'"  *Almonte v. Pub. Storage Inc.*, No. 11 Civ. 1404 (DLC), 2011 WL 3902997, at *2 (S.D.N.Y. Sept. 2, 2011) (quoting *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996)).

Because *pro se* litigants are generally unfamiliar with the procedural requirements of summary judgment motions, they are provided with a specific notification when the motion is filed.  *See Irby v. New York City Transit Auth.*, 262 F.3d 412, 414 (2d Cir. 2001); *see also* Local R. Civ. P. 56(b).  Here, the record reflects that Plaintiff was served with the requisite notice that informed him of his obligation to respond, his burden of producing evidence in opposition, and that Defendants' factual statements may be accepted as true if he failed to respond.  ECF Nos. 15-6, 17.  Despite these warnings and two extensions of time to file a response (ECF Nos. 19, 22), Plaintiff failed to respond to Defendants' motion.

## II.    The Material Facts are Undisputed

Federal Rule of Civil Procedure 56(e)(2) provides that if a party "fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion."  The same rule is contained in Local Rule of Civil Procedure 56(a)(2), which provides that:

> The papers opposing a motion for summary judgment shall include a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried.  Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement.

Because Plaintiff failed to file a response to Defendants' statement of material facts, this Court considers the facts alleged by Defendants—which are supported by citations to evidence in admissible form—to be undisputed, in accordance with these rules. *See Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998). Accordingly, this Court adopts the Defendants' Statement of Material Facts as to Which There is No Genuine Issue. ECF No. 15-3. Those undisputed facts are summarized below.

In July of 2013 while Plaintiff was an inmate at MCJ, four individuals—including his mother and the mother of his child—were indefinitely suspended from visiting him. ECF No. 15-3, at ¶¶ 1, 3-4. This occurred because recorded phone calls between Plaintiff and these individuals revealed that they planned to introduce contraband into MCJ. *Id.* at ¶ 6. Specifically, Plaintiff requested that these individuals bring him marijuana and cigarettes, which are prohibited contraband at MCJ. *Id.* at ¶¶ 7-8. Plaintiff also admitted at a deposition that he asked the visitors to bring him these items. *Id.* at ¶¶ 13-14. As a result, these individuals received letters informing them that they were prohibited from visiting MCJ and explaining how they could seek to have their visiting privileges reinstated. *Id.* at ¶ 9. Plaintiff's visitation privileges were not otherwise restricted and he was not prevented from having other visitors. *Id.* at ¶ 18.

Plaintiff was released from MCJ on a furlough from December 12, 2013 to January 12, 2014. *Id.* at ¶ 19. He was then transferred from MCJ to New York State Prison in February of 2014, and he received visits from the prohibited individuals after he was transferred. *Id.* at ¶¶ 20-21.

4

### III.    Analysis

Plaintiff alleges that the restriction of his visitation privileges violated his due process rights.  ECF No. 1, at 6-7.  Defendants argue that summary judgment is appropriate because Plaintiff has no constitutional right to visitation.  ECF No. 15-5, at 5.

"Protected liberty interests may arise from two sources—the Due Process Clause itself and the laws of the States."  *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal quotation marks and citation omitted).  It is clear, however, that "[t]he denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence and therefore is not independently protected by the Due Process Clause."  *Id.* at 461 (internal quotation marks and citation omitted).  "Nor can it be said that New York has created a protected liberty interest in visitation as it is well-established that contact visits are a privilege for inmates, not a right."  *Caldwell v. Goord*, No. 09-CV-00945(Sr), 2013 WL 1289410, at *4 (W.D.N.Y. Mar. 27, 2013) (internal quotation marks, alteration, and citation omitted); *see also Midalgo v. Bass*, No. 9:03-CV-1128, 2006 WL 2795332, at *16 (N.D.N.Y. Sept. 26, 2006) ("[F]amily visitations for inmates only constitute a privilege and not a right.") (citations omitted).

The United States Supreme Court has held, however, that "state law may create enforceable liberty interests in the prison setting."  *Thompson*, 490 U.S. at 461.  To create a protected liberty interest, the state must "plac[e] substantive limitations on official discretion."  *Id.* at 462 (citing *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)).  "[T]he most common manner in which a State creates a liberty interest is by establishing 'substantive predicates' to govern official decision-making, and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met."  *Id.* (citation omitted).  Additionally, to create a liberty

interest the regulations must "contain 'explicitly mandatory language,' *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Id.* at 463 (citation omitted).

The relevant regulation in this case provides that:

> [A] superintendent *may* deny, limit, suspend for a term or indefinitely suspend the visitation privileges of any visitor if the superintendent has reasonable cause to believe that such action is necessary to maintain the safety, security, and good order of the facility. A loss of visiting privileges *may* be imposed for an inmate pursuant to the procedures for implementing the standards of inmate behavior under Chapter V of this Title and as set forth in subdivision (d)[.]

7 N.Y.C.R.R. § 201.4(a) (2016) (emphasis added). The regulation also provides that "[a] superintendent *may* suspend a visitor's visitation privileges for a term of six months or more, or indefinitely suspend a visitor's visiting privileges . . . , for misconduct that represents a serious threat to the safety, security, and good order of the facility[.]" *Id.* at § 201.4(c) (emphasis added). Such misconduct includes a visitor's "[a]ttempt to introduce contraband." *Id.* at § 201.4(e)(3).

This regulation does not create a protected liberty interest because it lacks the requisite mandatory language. The superintendent *may* exclude a visitor under certain circumstances, but he or she is not required to. This regulation is "not worded in such a way that an inmate could reasonably expect to enforce [it] against the prison officials." *Thompson*, 490 U.S. at 465. Accordingly, because Plaintiff does not have a constitutional right to visitation and the relevant regulation does not establish a liberty interest[3] protected by the Due Process Clause, the Defendants' Motion for Summary Judgment is granted.

---

[3]     Even if Plaintiff did have a liberty interest in visitation, it is clear that Defendants had "reasonable cause" to believe that suspending certain visitors was "necessary to maintain the safety, security, and good order of the facility." 7 N.Y.C.R.R. § 201.4(a) (2016). Recorded telephone calls between Plaintiff and the prohibited visitors

## CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment (ECF No. 15) is GRANTED, and Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Any request to proceed *in forma pauperis* on appeal should be directed by motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure. The Clerk of Court is directed to terminate this action.

IT IS SO ORDERED.

Dated: August 17, 2016
         Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

revealed that they planned to introduce contraband—marijuana and cigarettes—into MCJ. ECF No. 15-3, at ¶¶ 6-8. Plaintiff also admitted this at a deposition. *Id.* at ¶¶ 13-14. An attempt to introduce contraband into MCJ is grounds for suspending an individual's visitation privileges. *See* 7 N.Y.C.R.R. § 201.4(e)(3) (2016); *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (finding a legitimate penological interest in maintaining prison security and noting that courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them").